UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAY S.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C19-6116-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of his application for Supplemental Security Income. He contends the ALJ erred by rejecting the opinions of an examining psychologist, a reviewing psychologist, and his mental health counselor. Dkt. 12. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 48 years old, has a GED, and has worked as a kitchen helper. Tr. 113, 115. In November 2016, he applied for benefits, alleging disability as of January 1, 2016. Tr. 315. After a hearing, the ALJ issued a 2018 decision denying disability. Tr. 28–42. The ALJ determined that plaintiff has the severe impairment of major depressive disorder with psychotic features. Tr. 31. The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with a number of non-exertional

limitations: he can understand, remember, and apply only short, simple instructions while performing only routine tasks; he can make only simple decisions and not in a fast-paced, production-type environment; and he can have only occasional interaction with the general public and coworkers. The ALJ determined that because plaintiff could still perform past relevant work as a kitchen helper, he was not disabled. Tr. 41–42.

## DISCUSSION

Plaintiff contends that the ALJ erred by rejecting the December 2015 and December 2016 opinions of examining psychologist Daniel Pratt, Psy.D., the December 2016 concurring opinion of reviewing psychologist Holly Petaja, Ph.D., and the July 2018 opinion of mental health counselor Javier Fregoso, LMHCA, MHP. The Court disagrees because the ALJ's decision was supported by substantial evidence and was free from harmful legal error. *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012).

**1. Examining Psychologist Dr. Pratt and Reviewing Psychologist Dr. Petaja**

Plaintiff contends that the ALJ failed to state specific and legitimate reasons for rejecting the December 2015 and December 2016 opinions of examining psychologist Dr. Pratt and the concurring December 2016 opinion of Dr. Petaja.[1] *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Court finds that the ALJ did not state a specific and legitimate reason for rejecting Dr. Pratt's December 2015 opinion, but that the error was harmless because Dr. Pratt's December 2016 opinion—which occurred after the alleged onset date and referred to more severe limitations—and Dr. Petaja's December 2016 concurring opinion were reasonably discounted in light of the other medical evidence.

---

[1] Reviewing psychologists Michael L. Brown, Ph.D., and Renee Eisenhauer, Ph.D., opined that plaintiff could perform work with mental limitations consistent with the ALJ's assessed RFC. *See* Tr. 170–71, 191–93.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 2

### a. Dr. Pratt's December 2015 Opinion

In December 2015, Dr. Pratt opined that plaintiff had marked limitations in seven domains, had moderate limitations in four domains, and had an overall severity rating of marked. Tr. 430. The ALJ gave little weight to Dr. Pratt's December 2015 opinion because the opinion dated from nearly a year prior to the November 2016 application date and was therefore "largely irrelevant to the claimant's functioning during the course of the period at issue." Tr. 40.

Plaintiff is correct that the ALJ should not have dismissed Dr. Pratt's December 2015 opinion solely because it preceded the application date by 11 months. First, the regulations provide that the agency generally will develop a claimant's medical history for at least the 12 months preceding the month in which an application is filed. 20 C.F.R. § 416.912(3)(b). Second, although plaintiff applied for benefits in November 2016, he alleged an onset date of January 2016, i.e., only weeks after Dr. Pratt's December 2015 evaluation. Although SSI payments may not be paid for periods earlier than the application date, this does not render the alleged onset date irrelevant when charting the history and severity of plaintiff's functional limitations. *See* 20 C.F.R. §§ 416.335, 416.912. For that reason, the agency explicitly considered and substantively evaluated Dr. Pratt's December 2015 opinion during initial consideration and reconsideration. Tr. 164, 182. Third, at the hearing the ALJ assured plaintiff's counsel that he would not do precisely what he did in the decision: decline to consider the substance of Dr. Pratt's December 2015 opinion because it was outside of the relevant period. Tr. 107–09. The ALJ rejected plaintiff request to amend the onset date to December 8, 2015—the date of Dr. Pratt's opinion— because the amendment was unnecessary and because the ALJ would "look at everything." Tr. 108.

1   It was clear error for the ALJ to dismiss Dr. Pratt's December 2015 opinion as being
2   irrelevant to plaintiff's functioning during the period at issue. Plaintiff argues that this error was
3   harmful because the ALJ rejected the claim of disability based on lack of chronicity of symptoms
4   and limitations. The Court disagrees because, as discussed below, the ALJ adequately justified
5   rejecting Dr. Pratt's December 2016 opinion and Dr. Petaja's December 2016 concurring
6   opinion, which stated greater limitations, occurred after the alleged onset date, and were
7   contradicted in terms of chronicity of symptoms and limitations by other medical evidence.

8   **b.   Dr. Pratt's December 2016 Opinion and Dr. Petaja's Concurring Opinion**

9   On December 15, 2016, Dr. Pratt reevaluated plaintiff and opined that he had severe
10  limitations in four domains—understanding, remembering, and persisting in tasks by following
11  detailed instructions; communicating and performing effectively in a work setting; maintaining
12  appropriate behavior in a work setting; and completing a normal work day and work week
13  without interruptions from psychologically based symptoms—had marked limitations in the
14  remaining nine domains, and had an overall severity rating of marked. Tr. 560. On December 20,
15  2016, Dr. Petaja reviewed Dr. Pratt's December 2016 opinion and concurred with the
16  conclusions about severe limitations, marked limitations, and the overall severity rating. Tr. 563–
17  66. The ALJ noted that Dr. Pratt's December 2016 opinion stated greater functional limitations
18  than did Dr. Pratt's December 2015 opinion, and gave little weight both to Dr. Pratt's December
19  2016 opinion and to Dr. Petaja's concurring, non-examining December 2016 opinion. Tr. 40.
20  The ALJ stated two reasons for discounting Dr. Pratt's and Dr. Petaja's 2016 opinions:
21  (1) inconsistency with the record; and (2) internal inconsistency with Dr. Pratt's own
22  observations. *Id.*
23

First, the ALJ found the chronic nature and severity of the limitations opined by Drs. Pratt and Petaja to be inconsistent with the largely unremarkable findings noted before Dr. Pratt's evaluation in December 2016 and thereafter in January and March 2017. Tr. 40; *see* Tr. 38. Three days before Dr. Pratt's opinion, on December 12, 2016, plaintiff presented for mental health treatment at Cascade Mental Health with the chief complaint of "I am dealing with kidney stones." Tr. 546. Plaintiff reported stable symptoms on present medications with no side effects, no depression or anxiety, no mood swings, no psychosis, and "OK" sleep. Tr. 546; *see* Tr. 37–38 (ALJ's discussion). The provider determined that he had speech within normal limits; coherent thought processes and organized associations; no psychotic symptoms; good/fair judgment and insight; orientation times four; grossly intact memory; attention/concentration within normal limits; intact fund of knowledge; and euthymic mood and affect. Tr. 546–47; *see* Tr. 38. Upon his follow up at Cascade Mental Health in March 2017, although he complained of hallucinations, plaintiff's presentation objectively was nearly identical, with the exception that he was "feeling sad," which appeared to be related to "dealing with his mother's recent death." Tr. 589–90; *see* Tr. 38. His provider noted that plaintiff "now reports hallucinations? (no description offered)." Tr. 589. Meanwhile, between the December 2016 and March 2017 appointments at Cascade Mental Health, plaintiff had presented to medical providers with significantly better functionality socially and mentally than attested to in his hearing testimony. *See* Tr. 38. For example, in January 2017, plaintiff presented to his health care provider with shoulder pain while referring to currently playing "in a few bands" and increased pain when "playing drums." Tr. 635; *see* Tr. 38. During that visit, and at other visits, plaintiff presented with normal psychiatric functioning, i.e., being oriented to time, place, person, and situation with appropriate mood and affect. *See, e.g.*, Tr. 637; *see* Tr. 38.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 5

Second, the ALJ found that the severity of the abnormalities assessed by Dr. Pratt and confirmed by Dr. Petaja were inconsistent with Dr. Pratt's contemporary examination findings. Tr. 40; *see* Tr. 38. Dr. Pratt noted that plaintiff had speech of normal rate, pitch, volume and prosody; was cooperative; and had orientation, memory, and abstract thought within normal limits. Tr. 561–62; *see* Tr. 38. Moreover, while Dr. Pratt referred to areas in which plaintiff's functioning was outside normal limits, he also indicated what could be interpreted as indicating a higher degree of functioning in those areas: claimant had mostly linear and logical stream of mental activity with limited evidence of thought disorganization; realized that his expressed fears were irrational; could name the state capital, bordering states, and where the President resided; completed five out of seven serial threes correctly, in addition to completing a forward and reverse spelling task correctly; and had intact-appearing insight into his situation and mental health, as evidenced by his articulated awareness into his mental health symptoms. Tr. 561–62; *see* Tr. 38.

Both of the ALJ's proffered reasons for discounting the December 2016 opinions of Drs. Pratt and Petaja—inconsistency with the record and internal inconsistency with Dr. Pratt's contemporaneous observations—are specific, legitimate, and based on a reasonable interpretation of contradictory evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see, e.g.*, Tr. 166 ("The claimant's presentation changes depending on the situation where it is significantly worse when he is seen for a disability evaluation compared to when he is seen by his counselor."); Tr. 185 ("Mentally capable of simple tasks with no public contact and occasional peer interaction."). Plaintiff's arguments to the contrary do not undermine the reasonableness of the ALJ's interpretation.

First, plaintiff is incorrect that the ALJ did not explain why Dr. Pratt's contemporaneous findings—such as that plaintiff had speech of normal rate, pitch, and prosody; and had orientation, memory, and abstract thought within normal limits—might reasonably undermine the opinions of Drs. Pratt and Petaja. Those observations could conceivably support the conclusion that plaintiff showed more severe symptoms when evaluated by Dr. Pratt versus when he presented to treating mental and physical health care providers. *See, e.g.*, Tr. 546–47, 589–90, 635–37. Second, plaintiff does not demonstrate that the ALJ impermissibly cherry-picked through the mental health record or considered only his quarterly medication management at Cascade Mental Health and other extraneous healthcare notes at the exclusion of his monthly treatment at Greater Lakes Mental Healthcare. For example, plaintiff criticizes the ALJ for finding Dr. Pratt's opinion to be inconsistent with a Community Healthcare note from January 2017 indicating that plaintiff was playing in a few bands because plaintiff testified to playing the guitar upon the advice of his counselor and only playing occasionally for 20 minutes at a time. Dkt. 12, at 11. That is, however, the kind of factual dispute that the ALJ is tasked with evaluating. Plaintiff fails to note that plaintiff's earlier SSI application was denied, in part, because plaintiff had knowingly misrepresented his ability to play the guitar in front of an audience in order to obtain benefits. Tr. 204–205. Moreover, the record is replete with indications that plaintiff continues to misrepresent how frequently and deftly he plays the guitar. *See, e.g.*, Tr. 446 (August 2016 emergency room visit because plaintiff hurt thumb playing guitar); Tr. 658 (September 2017 Cascade Mental Health note that plaintiff's chief complaint/reason for encounter was "I have 2 gigs in Seattle"); Tr. 691 (October 2017 Greater Lakes Mental Healthcare note that plaintiff gets exercise by playing guitar); Tr. 701 (August 2017 Greater Lakes Mental Healthcare note that plaintiff gets exercise by bicycling and by

1  playing guitar); Tr. 711 (April 2017 Greater Lakes Mental Healthcare note that plaintiff gets

2  exercise by bicycling and by playing guitar); Tr. 731 (January 2018 Greater Lakes Mental

3  Healthcare note that plaintiff gets exercise in band practice); Tr. 737 (March 2018 Greater Lakes

4  Mental Healthcare note that plaintiff gets "a cardio workout when I play guitar in the band" and

5  "We have band practice 3 times a week"). It is unsurprising that the ALJ chose to focus on the

6  detailed records from Cascade Mental Health, which include statements such as plaintiff's

7  August 2018 chief complaint that "I have nothing going on" and that plaintiff "reports stable

8  symptoms on present medications with no side effects, no depression or anxiety, no mood

9  swings, no psychosis, sleep is OK." Tr. 649. The treatment notes from Greater Lakes Mental

10 Healthcare, which are referred to and cited by the ALJ, are lengthy but not particularly helpful to

11 plaintiff's cause. *See* Tr. 39, 667–752. The ALJ accurately concluded that, consistent with

12 hearing testimony that medication had been helpful, the "mental status examinations dated from

13 January to May 2018 [from Greater Lakes Mental Healthcare] showed consistent findings of

14 euthymic mood, alert appearance/speech, and logical/linear/coherent thought process." Tr. 39

15 (citing Tr. 720, 723, 726, 729, 732, 735). In fact, aside from citing mental health counselor Mr.

16 Fregoso's opinion, discussed below, plaintiff does not persuade that the notes from Greater

17 Lakes Mental Healthcare better support his position than they do the ALJ's assessed RFC.

18       The Court finds the ALJ supported the decision to discount Dr. Pratt's December 2016

19 examining opinion and Dr. Petaja's confirming reviewing opinion with substantial evidence and

20 did not commit harmful, legal error in doing so. Because Dr. Pratt's December 2016 opinion

21 stated more severe limitations and occurred after the alleged onset date, the ALJ's clear error in

22 rejecting Dr. Pratt's December 2015 opinion on the basis of its early date constituted harmless

23 error.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 8

**2. Mental Health Counselor Mr. Fregoso**

Plaintiff contends the ALJ failed to state germane reasons for rejecting the July 2018 opinion of mental health counselor Mr. Fregoso. *See Turner v. Commissioner of the SSA*, 613 F.3d 1217, 1223–1224 (9th Cir. 2010). The Court disagrees.

Mr. Fregoso filled out a checkbox mental source statement in which he opined that plaintiff was markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and was moderately limited in 11 other domains. Tr. 790–92. Mr. Fregoso responded to queries about the cumulative effect of these limitations on plaintiff's ability to work as "Beyond scope of practice." Tr. 792. The ALJ gave only some weight to Mr. Fregoso's opinion because the record did not support any marked functional limitations, Mr. Fregoso's opinion noted largely mild or moderate limitations, and Mr. Fregoso's April and May 2018 notes referred to a euthymic mood, alert appearance/speech, and logical/linear/coherent thought process. Tr. 41 (citing Tr. 724, 727, 790–93). These were germane reasons to discount Mr. Fregoso's opinion.

Plaintiff argues that because the ALJ accepted Mr. Fregoso's opinion that plaintiff had moderate limitations in a number of domains, and those moderate limitations would, according to vocational expert testimony, preclude sufficient attendance to sustain fulltime work, plaintiff should have been found to be disabled. This argument is unavailing because the ALJ did not accept Mr. Fregoso's opinion whole cloth. Mr. Fregoso's opinion was discounted to the extent that it contradicted the assessed RFC.

The Court finds that the ALJ did not err as a matter of fact or law by discounting Mr. Fregoso's opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 2nd day of September, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge